No. 5:24-cv-00406-M-KS

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

AMBERLY INVESTMENT L.L.C.,
*Plaintiff*,

---v.---

ARCADIS PROFESSIONAL SERVICES (USA) INC. f/k/a IBI GROUP PROFESSIONAL
SERVICES (USA) INC.,
*Defendant*.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S PARTIAL MOTION TO DISMISS (Fed. R. Civ. P. 12(b)(6))
OR, IN THE ALTERNATIVE,
PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS
AS TO CLAIMS FOR BREACH OF CONTRACT IMPLIED IN FACT AND
BREACH OF CONTRACT IMPLIED IN LAW**

ALLEN L. WEST
ADRIANNE CHILLEMI[1]
525 N. TRYON STREET, SUITE 1400
CHARLOTTE, NC 28202
(704) 344-1117
*Attorneys for Defendant Arcadis
Proccesional Services (USA) Inc. f/k/a IBI
Group Professional Services (USA) Inc.*

---

[1]     Ms. Chillemi submitted her Application for Admission to Practice in this Court on July 17, 2024, via United States Postal Service. Her application is pending as of July 18, 2024.

4856-6404-9618, v. 1

NOW COMES Defendant Arcadis Professional Services (USA) Inc. f/k/a IBI Group Professional Services (USA) Inc. ("Defendant," "Arcadis," or the "Architect") and submits this Memorandum of Law in support of its Partial Motion to Dismiss, pursuant to Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant respectfully requests its Motion be GRANTED as Plaintiff Amberly Investment L.L.C. ("Plaintiff" or the "Owner") has failed to state a claim upon which relief can be granted for seven of the eight claims for relief it has asserted in its Complaint [DKT No. 1, No. 2].

I. **NATURE OF THE CASE**

This matter presents for the Court what should be a straightforward construction law dispute—but for the claims that are the subject of this Partial Motion to Dismiss. Plaintiff entered into an agreement with certain corporate predecessor entities of Arcadis. That agreement was for the provision of architectural services on a project owned by Plaintiff and known as the Amberly Learning Center Project (the "Project") in Cary, North Carolina. Plaintiff alleges that errors and omissions in the plans and specifications prepared by the Architect for the Project caused it to incur additional costs in the form of eleven change orders Plaintiff presumably paid to the contractor on the Project.

While Plaintiff includes a straightforward—if fatally flawed—breach of contract claim in its Complaint, it has also pled a laundry list of additional causes of action that are subject to dismissal pursuant to the Motion:

- Second Claim for Relief/Breach of Contract Implied in Fact, discussed in section A below;

- Third Claim for Relief/Breach of Contract Implied in Law, discussed in section A below;

- Fourth Claim for Relief/Negligence, discussed in section B below;

- Fifth Claim for Relief/Fraud, discussed in sections C and D below;

1

- Sixth Claim for Relief/Negligent Misrepresentation, discussed in sections C and D below;

- Seventh Claim for Relief/Violation of UDTPA, discussed in sections C, D, and E below; and

- Eighth Claim for Relief/Punitive Damages, discussed in section F below.

In addition to dismissal of these Claims for Relief, Arcadis seeks dismissal of Plaintiff's claims for consequential damages, based upon a provision in the parties' contract (discussed in section G below). As discussed in full herein, this Court should grant Arcadis's Partial Motion to Dismiss.

II.    **STATEMENT OF THE FACTS AS PLED**

Plaintiff and a corporate predecessor entity of Arcadis entered into a "valid, binding, and enforceable" contract for the Project, that is attached to the Complaint as Exhibit A (the "Contract" or the "Parties' Contract") and that governed Arcadis's architectural services on the Project. Compl. ¶ 20.  As alleged by Plaintiff's Complaint, "[p]ursuant to the Contract, Arcadis was required to provide ***comprehensive professional services*** directly related to designs and plans for the Project . . . ." Compl. ¶ 7 (emphasis added).  Plaintiff's Complaint acknowledges that the Parties' Contract incorporated an obligation on the part of Arcadis to perform its services in accordance with the standard of care, citing the following provision of the Parties' Contract: "[The Architect] shall perform services in accordance with the standard of case and diligence normally practiced by design firms performing services of a similar nature in the same locale at the time the services are provided. [The Architect] provides no express or implied warranties or guarantees of any kind." Compl. ¶ 8 (citing Compl. Ex. A ¶ 1.2).

Plaintiff alleges that "numerous errors and deficiencies … in the plans and specifications provided by Arcadis [led] to a significant increase in construction expenses for the Project" and that "eleven (11) Change Orders (the "Change Orders") were required to address and/or fix the errors and deficiencies in the plans and specifications provided by Arcadis." Compl. ¶ 13.  Plaintiff

alleges that these breaches by Arcadis of the Parties' Contract caused it to suffer "direct and consequential damages" that Plaintiff alleges it is entitled to recover from Arcadis under the Contract and pursuant to various extracontractual legal theories. *E.g.*, Compl. ¶ 25.

### III. STANDARD OF REVIEW

Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted test the legal sufficiency of claims for relief. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In analyzing 12(b)(6) motions, a court must determine whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. *Iqbal*, 129 S.Ct. at 1949–50; *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (2010); *Nemet Chevrolet Ltd. v. Consumeraffairs.com. Inc.*, 591 F.3d 250, 253 (4th Cir.2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted).

In *Ashcroft v. Iqbal*, the Supreme Court made clear that Rule 8(a) "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct[.]" *Id.* Without such "heft," claims cannot establish a valid entitlement to relief. *Id.* at 678, 680.

**Governing Law**. While in diversity as it is in this case, this Court should apply the law of North Carolina, both because the Project was located in North Carolina and because Section 12.14

4856-6404-9618, v. 1

of the Parties' Contract contains a North Carolina governing law provision. Thus, on legal questions, this Court must determine how the Supreme Court of North Carolina would rule. *See Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Beverage Co.*, 433 F.3d 365, 369 (4th Cir.2005) (cited in *Riggs v. Orkin, Inc.*, No. 7:11-CV-5-D, 2-3 (E.D.N.C. Jun. 13, 2011)). "If the Supreme Court of [North] Carolina has spoken neither directly nor indirectly on the particular issue [the Court is], called upon to predict how that court would rule if presented with the issue." *Id.* (quotation omitted). In making that prediction, the court may consider lower court opinions in North Carolina, treatises, and the practices of other states. *See id.*

**The Parties' Contract**. In reviewing a motion to dismiss under Rule 12(b)(6), the court "may consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State For Defence v. Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted). Here, the Parties' Contract is attached to the Complaint as Exhibit A and is referenced throughout the Plaintiff's Complaint. Accordingly, this Court's consideration of the Parties' Contract does not convert this Partial Motion to Dismiss to a motion for summary judgment.

## IV. **ARGUMENT**

### A. **Plaintiff's Claims Based on Implied Contract Should be Dismissed.**

In Paragraph 20 of its Complaint, Plaintiff states that "[t]he Contract between Plaintiff and Defendant [attached to the Complaint as Exhibit A] is valid, binding, and enforceable." Compl. ¶ 20. Plaintiff seeks recovery for Arcadis's alleged breaches of the Contract pursuant to its First Claim for Relief/Breach of Contract. Arcadis, in its Answer & Affirmative Defenses being filed almost-contemporaneously with this Partial Motion to Dismiss, admits that the Contract attached

4856-6404-9618, v. 1

to the Complaint is "valid, binding, and enforceable."[2]  As discussed further below in Sections B and C, Plaintiff's claims against Arcadis are founded upon the services performed by Arcadis under the Contract and the damages sought involve increased construction costs due to alleged errors and omissions in the plans and specifications prepared by Arcadis pursuant to the Parties' Contract.  Indeed, even Plaintiff's tort-based claims are inextricably intertwined with Arcadis's services under the Contract.

Despite the fully-executed, undisputed, written Contract for the Project and the architectural services about which Plaintiff complains, Plaintiff has also pled two additional claims based on implied contract: its Second Claim for Relief/Breach of Contract Implied in Fact and its Third Claim for Relief/Breach of Contract Implied in Law.  These two types of implied contracts have "a significant doctrinal distinction in North Carolina law."  *Anderson v. Lab'y Corp. of Am. Holdings,* No. 1:17CV193, 2019 WL 3858320, at *2–3 (M.D.N.C. Aug. 16, 2019).

An implied-in-fact contract "exists by virtue of the parties' conduct, rather than in any explicit set of words." *Kiousis v. Kiousis*, 130 N.C. App. 569, 573, 503 S.E.2d 437, 440 (1998). "However, although its terms may not be expressed in words, or at least not fully in words, the legal effect of an implied in fact contract is the same as that of an express contract in that it too is considered a real contract or genuine agreement between the parties." *Id.* (internal quotation marks omitted).

On the other hand, "[a] quasi contract or a contract implied in law is not a contract. The claim is not based on a promise but is imposed by law to prevent an unjust enrichment." *Booe v.*

---

[2] With regards to this Partial Motion to Dismiss as it pertains to Plaintiff's Second and Third Claims for Relief for claims based on implied contract theories, if the Court's determination rests upon the admission that the Parties' Contract is "valid, binding, and enforceable" as contained in Arcadis's Answer & Affirmative Defenses, and the Court deems appropriate, Arcadis moves in the alternative for judgment on the pleadings on those claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

4856-6404-9618, v. 1

*Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). Both theories are inapplicable when a written agreement governs the subject matter of the dispute. *See, e.g., Triad Packaging, Inc. v. SupplyOne, Inc.,* 925 F. Supp. 2d 774, 787 (W.D.N.C. 2013), aff'd, 597 F. App'x 734 (4th Cir. 2015) (citing *Whitfield v. Gilchrist,* 348 N.C. 39, 497 S.E.2d 412, 415 (1998) for the proposition "[t]hat a contract implied by law cannot be asserted where an express contract exists is horn book or blackletter law")); *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 41, 587 S.E.2d 470, 475 (2003) (refusing to allow an indemnity provision to be "implied in fact" where a written contract governed the subject matter of the dispute, noting that "[f]or this Court to read a right of indemnity implied-in-fact into such bald allegations would be to do so in every . . . agreement, thus infringing upon this state's long standing and coveted principle of freedom of contract.").

Arcadis acknowledges that North Carolina law gives a plaintiff latitude to plead contractual theories in the alternative. *See, e.g., James River Equip., Inc. v. Mecklenburg Utils., Inc.,* 179 N.C. App. 414, 634 S.E.2d 557 (2006) (stating that "[i]t is well-established that '[l]iberal pleading rules permit pleading in the alternative") (first alteration in original) (citation omitted)), *appeal dismissed and disc. rev. denied,* 644 S.E.2d 226 (N.C.2007); *Thimbler, Inc. v. Unique Sols. Design, Ltd.,* No. 5:12-CV-695-BR, 2013 WL 4854514, at *6 (E.D.N.C. Sept. 11, 2013); *River's Edge Pharms., LLC v. Gorbec Pharms. Servs., Inc.,* No. 1:10CV991, 2012 WL 1439133, at *19 (M.D.N.C. Apr. 25, 2012).

However, that latitude is not without limits, and courts applying North Carolina law have found grounds to grant motions to dismiss claims based on implied contract theories in cases similar to this one.

*First*, where a contract covering the subject matter of the dispute has been pled by the plaintiff and clearly established—as is the case here—claims based on implied contract should be

4856-6404-9618, v. 1

dismissed. *Craft v. Tabor*, No. 3:19-CV-469-RJC-DCK, 2021 WL 6618673, at *17 (W.D.N.C. Mar. 1, 2021) (finding that when a party attempts to plead an unjust enrichment claim alternatively to a breach of contract claim, the unjust enrichment claim is properly dismissed on a Rule 12(b)(6) motion when the parties' written contract plainly covers the work that is subject to the claim); *Niloy, Inc. v. Lowe's Cos., Inc.*, No. 5:15-CV-00029-RLV-DCK, 2017 WL 29338, at *8 (W.D.N.C. Jan. 3, 2017) ("The ability of a party to raise an unjust enrichment claim in the alternative to a breach of contract claim ... rests on the absence of evidence establishing the existence of an express contract."); *Market Choice, Inc. v. New England Coffee, Co.,* 5:08-CV-090-RLV, at *12 (W.D.N.C. Aug. 8, 2009) (granting motion to dismiss pursuant to Rule 12(b)(6) and stating "[t]his Court will not impose an implied contract for the same subject matter addressed by the parties' express contract."). *Cf. Pitts v. LStar Dev. Grp., Inc.,* No. 5:20-CV-525-FL, 2021 WL 4236871, at *5 (E.D.N.C. Sept. 16, 2021) (denying motion to dismiss quantum meruit claim where plaintiff also asserted a claim for contract implied in fact because "at this preliminary stage, the court will not assume the existence of an express contract"); *Thimbler, Inc. v. Unique Sols. Design, Ltd.*, No. 5:12-CV-695-BR, 2013 WL 4854514, at *6 (E.D.N.C. Sept. 11, 2013) (denying motion to dismiss pursuant to Rule 12(b)(6) on quantum meruit claim but noting as rationale that "the quantum meruit claim is viable at this stage of the proceedings because the existence of an enforceable contract has not been conclusively established").

While cases addressing dismissal of claims based on contract implied in fact when there is a written agreement on the same subject are rarer than those involving parallel claims for contract implied in law, the North Carolina Court of Appeals decision in *Kaleel Builders* provides support for the proposition that North Carolina will not recognize separate, implied contractual bargains

4856-6404-9618, v. 1

based on the parties' conduct where an underlying construction project is governed by written agreements.  161 N.C. App. at 41, 587 S.E.2d at 475.

Because there is a clearly-established written Contract governing Arcadis's services on the underlying Project and alleged errors and omissions in those services are the gravamen of this action, this Court should decline Plaintiff's invitation to imply an alternate agreement than the Parties' Contract and should dismiss Plaintiff's Second and Third Claims for Relief.

*Second*, even if this Court were to find that Plaintiff is entitled to plead alternate theories at this stage of the litigation, Plaintiff's claim for Contract Implied in Fact does not meet the general pleading standard set forth in *Iqbal*, that the allegations consist of more than "threadbare recitals of the elements of a causer of action, supported by mere conclusory statements." *Cf. United States v. Jurik*, 943 F. Supp. 2d 602, 612–13 (E.D.N.C. 2013) (dismissing claims where "the complaint, at best, contains a mere recitation of the elements of these quasi-contract claims" failed to set forth "the terms of the alleged contract and how such terms fail to provide an adequate remedy"). Rather, the Complaint's allegations of a contract implied in fact generally allege an agreement for the exchange of payment and the provision of professional services. Plaintiff does not allege the terms of any agreement outside the Parties' Contract, much less the elements of such agreement— there is no discussion of an offer, an acceptance, or terms beyond those that, again, are the subject of the Parties' Contract.  Instead, Plaintiff states "[i]n the event the express contract entered into between Plaintiff and Defendant does not support the recovery as prayed for herein, then the Plaintiff alleges in the alternative that a contract implied in fact existed between Plaintiff and Defendant for the rendering of professional services."  Compl. ¶ 28.

To rephrase these allegations, Plaintiff is stating that if it cannot recover under the Contract, the Court should apply some alternate agreement regarding its right of recovery. Simply put, the

4856-6404-9618, v. 1

law of North Carolina does not support such a cause of action, and for this Court to allow the Plaintiff to proceed on the basis of these barebones allegations would effectively undo the law of contract. For these reasons, Plaintiff's Complaint fails to state a claim for Breach of Contract Implied in Fact and that claim should be dismissed.

**B.  Plaintiff's Negligence Claim is Barred by the Economic Loss Rule.**

As acknowledged by Plaintiff, the services provided by the Architect on the Project that is the subject of the underlying action were governed by the terms of the Parties' Contract. Compl.¶¶ 7, 8, 20, *seriatim* . As a result, if the Architect breached its duties on the Project, the proper remedy is the breach of contract claim pled by the Plaintiff as its First Claim for Relief, rather than its claims sounding in tort. *See generally Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.,* 376 N.C. 54, 58, 852 S.E.2d 98, 101 (2020) ("Applying the economic loss rule, North Carolina courts have long refused to recognize claims for breach of contract disguised as the type of negligence claim that [the owner] asserted against [the subcontractor] in the case before us."); *North Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co*., 294 N.C. 73, 81, 240 S.E.2d 345, 350-51 (1978), *rejected in part on other grounds by Trustees of Rowan Tech. v. Hammond Assoc., Inc.,* 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985); *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 46, 587 S.E.2d 470, 478 (2003).

The North Carolina Supreme Court has made clear that "[o]rdinarily a breach of contract does not give rise to a tort action by the promisee against the promisor." *Ports Auth.*, 294 N.C. at 81, 240 S.E.2d at 350. In other words,

> a tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. It is the law of contract and not

4856-6404-9618, v. 1

> the law of negligence which defines the obligations and remedies of the parties in such a situation.

*Spillman v. American Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992). This principle is known alternatively as the Economic Loss Rule or the *Ports Authority* rule and has been applied to bar claims that piggyback breach of contract claims in the construction context.

In *Ports Authority*, itself a construction case, plaintiff-owner contracted with defendant, a general contractor, to construct two buildings. Plaintiff alleged that defendant negligently constructed the roofs, and as a result the roofs leaked. *Id.*, 294 N.C. at 81, 240 S.E. 2d at 350. Plaintiff brought claims for both breach of contract and negligence. The North Carolina Supreme Court held that, where the parties' obligations are set out in contract and plaintiff brings claims based both in contract and in tort, the tort claims are "surplusage and should be disregarded." *Id.* at 83, 240 S.E. 2d at 351. Moreover, the court stated that it had found no binding authority holding that a tort action would lie "against a promisor for simple failure to perform his contract, ***even though such failure was due to negligence*** or lack of skill." *Id.* (emphasis added).

North Carolina courts have uniformly applied the Economic Loss Rule in the construction context, with both the *Kaleel Builders* decision and the unpublished decision in *Frye Regional* making clear that the economic loss rule bars tort-based claims by a project owner against a design professional where there is contractual privity between the two. *See Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 46, 587 S.E.2d 470, 478 (2003); *Frye Reg'l. Med. Ctr. v. Hostetter & Keach, Inc.,* No. COA13-313, 2013 WL 6235328 (N.C. App. Dec. 3, 2013) (unpub.).

Federal courts applying North Carolina law have stated that "the relevant inquiry under North Carolina case law is whether the plaintiff has a basis for recovery in contract or warranty." *E.g., Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 786 (4th Cir. 2012) (quoting *Warfield v. Hicks*,

91 N.C. App. 1, 10 (1988)).  Indeed, a decision of this Court has applied the concept in both the affirmative and the inverse when examining claims against an architect.  *See New Dunn Hotel, LLC v. K2M Design, LLC*, No. 5:20-CV-107-FL, 2020 WL 2575562, at *5 (E.D.N.C. May 21, 2020).  The New Dunn Hotel decision involved a partial motion to dismiss negligence claims filed by an architect defendant.  In that case, there were two plaintiffs—a hotel owner that was not in contractual privity with the architect and a hotel operator that was.  *Id*. at *2.  Judge Flanagan examined North Carolina law applying the Economic Loss Rule and allowed the negligence claim by the hotel owner (without a contract with the architect) to proceed.  *Id*. at *5.  In contrast, Judge Flanagan dismissed with prejudice the negligence claim asserted by the hotel operator that was in contractual privity with the architect, finding that the architect's working relationship and community of interests with the hotel operator was not distinct form the parties' contractual relationship.  *Id*. at *6.

Here, Plaintiff's allegations regarding the alleged negligence of Arcadis are not distinct from the allegations of breach of contract.  Rather, the allegations supporting its Fourth Claim for Relief/Negligence reference Arcadis's "obligations under Contract."  Compl.  ¶¶ 39, 40, 41.  The same is true of the allegations supporting its Sixth Claim for Relief/Negligent Misrepresentation.  Compl. ¶ 55.  Accordingly, because North Carolina law does not recognize duties in tort outside the Parties' Contract, Plaintiff's claim for Negligence should be dismissed with prejudice.

### C.  <u>Plaintiff's Other Extracontractual Claims are Likewise Barred by the Economic Loss Rule.</u>

In order to state a viable claim in tort for conduct that is also alleged to breach a contract, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract."  *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.,* 994 F. Supp. 350, 362 (W.D.N.C.1997). This "independent duty" exception has been "carefully circumscribed by state

4856-6404-9618, v. 1

law." *Strum v. Exxon Co., USA,* 15 F.3d 327, 331 (4th Cir.1994). The independent tort must be identifiable and "the tortious conduct must have an aggravating element such as malice or recklessness." *Strum,* 15 F.3d at 331. *See also Johnson v. Sprint Sols., Inc*., No. 3:08-CV-00054, 2008 WL 2949253, at *3 (W.D.N.C. July 29, 2008), *aff'd on other grounds*, 357 F. App'x 561 (4th Cir. 2009) (collecting cases dismissing extracontractual claims where those claims are predicated on contractual duties).

Utilizing the independent duty requirement, federal courts applying North Carolina law have recognized that the Economic Loss Rule operates to bar extracontractual claims where there are no allegations of facts that are identifiable and distinct from the allegations of breach of contract. *See, e.g. Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331 (4th Cir. 1998). Thus, where the "crux of the matter is and always has been a contract dispute," dismissal of claims of unfair and deceptive trade practices, fraud, and negligent misrepresentation is warranted. *Mecklenburg Cnty. v. Nortel Gov't Sols. Inc.,* No. CIV.A. 3:07-CV-00320, 2008 WL 906319, at *5 (W.D.N.C. Apr. 1, 2008) (quoting *Broussard*). *See also Ada Liss Grp. v. Sara Lee Corp.,* No. 06CV610, 2010 WL 3910433, at *10 (M.D.N.C. Apr. 27, 2010) (finding that, to the extent that a plaintiff's fraud and negligent misrepresentation claims simply mirror the claims for breach of contract or are based on the same allegations of misconduct as the breaches, they cannot survive dismissal).

In a case involving a motion to dismiss extracontractual claims, Judge Mullen of the Western District of North Carolina explained "[e]ven where a plaintiff may argue that a defendant "was negligent and fraudulent in its statements regarding [contractual] performance, [such a] position does not change the fact that these statements were directly related to [] performance of essential portions of the contract." *Mecklenburg Cnty. v. Nortel Gov't Sols. Inc.,* No. CIV.A. 3:07-

4856-6404-9618, v. 1

CV-00320, 2008 WL 906319, at *5 (W.D.N.C. Apr. 1, 2008) (internal citations omitted). As a result, "negligent or intentional actions, relating to contract performance, do not transform contract claims into independent torts or trade practice claims; the negligent or intentional nature of the actions is irrelevant.". *Id.*; *Branch Banking & Trust Co. v. Thompson,* 107 N.C. App. 53, 418 S.E. 2d 694 (1992) (holding that a mere breach of contract, even if intentional, does not give rise to independent non-contractual claims).

Here, in its Complaint, Plaintiff "fails to allege distinct and identifiable facts outside of contract performance" to support its extracontractual claims. *Id.* Rather, the allegations it uses to support those claims are inextricably intertwined with Arcadis's performance of its contractual duties as follows:

On its Fifth Claim for Relief/Fraud, Plaintiff states that Arcadis "in performing or attempting to perform the professional services relating to the Project and/or the Contract, made certain misrepresentations and/or concealed material facts" relating to the performance of Arcadis's professional services and the construction project at issue. Compl. ¶ 49.

For its Sixth Claim for Relief/Negligent Misrepresentation, Plaintiff states that Arcadis "in performing or attempting to perform the professional services relating to the Project and/or the Contract, supplied false information to Plaintiff relating to the performance of Arcadis's professional services and the construction project at issue. Compl. ¶ 55.

In its Seventh Claim for Relief/Violation of the North Carolina UDTPA, Plaintiff merely incorporates the preceding allegations of its Complaint—the larger majority of which expressly reference the Parties' Contract. Compl. ¶¶ 59-66. Thus, Plaintiff's Complaint is wholly devoid of separate, identifiable, or distinct facts that would separate its contract claim from its extracontractual claims. For these reasons, not only Plaintiff's negligence claim but also Plaintiff's

13

4856-6404-9618, v. 1

extracontractual claims for Fraud, Negligent Misrepresentation, and violation of the UDTPA should be dismissed under the Economic Loss Rule.

### D. **Plaintiff's Claims for Fraud, Negligent Misrepresentation, and UDTPA should be Dismissed Pursuant to Rule 9(b) because they are not pled with particularity.**

Not only because they are barred by the Economic Loss Rule, but also because they are not pleaded with the particularity, Plaintiff's claims for Fraud, Negligent Misrepresentation, and violations of the UDTPA should be dismissed. Pursuant to Rule 9(b) of both the Federal and North Carolina Rules of Civil Procedure, plaintiffs must plead with particularity the circumstance constituting their claims based on fraud. This pleading standard requires that a plaintiff, "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir.1999)). In other words, the plaintiff must state the "who, what, when, where, and how of the alleged fraud." *Singer v. TranS1, Inc.*, No. 7:12-CV-00023-F, 2015 WL 2341907, at *6 (E.D.N.C. May 14, 2015).

In addition, under Rule 9(b) of the North Carolina Rules of Civil Procedure, the particularity requirement is applicable to claims for negligent misrepresentation as well as fraud. *Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc*., 385 N.C. 250, 265–66, 891 S.E.2d 100, 113 (2023) ("We hold that, in North Carolina, claims for negligent misrepresentation must satisfy the heightened pleading standard of North Carolina Rules of Civil Procedure Rule 9(b)."). Similarly, federal courts in North Carolina have repeatedly held that the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure also applies to claims for negligent misrepresentation. *E.g., Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 727-28 (M.D.N.C. 2015); *Rohlik v. I–Flow Corp*., No. 7:10–CV–173–FL, 2011 WL 2669302, at *2 (E.D.N.C. July 7, 2011).

4856-6404-9618, v. 1

In addition, federal courts in North Carolina, including this Court, have extended the requirement of particularity "to claims under the UDTPA when such claims are predicated on an underlying fraud." *Diop v. BMW of N. Am., LLC*, 511 F. Supp. 3d 679, 687 (E.D.N.C. 2021) (citing *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 725-26 (M.D.N.C. 2015)).

Plaintiff's Complaint is <u>wholly</u> <u>devoid</u> of any of the requisite detail needed to state these claims. Plaintiff does not identify a speaker or provide any detail about the time or place of the alleged misrepresentation or omission. Indeed, even the substance of the allegedly fraudulent or misleading representation is vague and non-specific. In reviewing the allegations of the Complaint, the only specific representations of Defendant that are mentioned are that

> 11.    Arcadis deliberately misrepresented the flaws in its designs, claiming the designs met code requirements.

> 49.    Defendant, in performing or attempting to perform the professional services relating to the Project and/or the Contract, made certain misrepresentations and/or concealed material facts, including, but not limited to, representing its professional services were in compliance with applicable law, code, or regulation, misrepresenting to Plaintiff that the work had been satisfactorily completed, and/or misrepresenting to Plaintiff that the work it performed did not need to be corrected and/or that it owed no obligation to Plaintiff to correct its work.

> 55.    Defendant, in performing or attempting to perform the professional services relating to the Project and/or the Contract, supplied certain false information to Plaintiff, intending for Plaintiff to rely on said information, including, but not limited to, representing its professional services were in compliance with applicable law, code, or regulation, misrepresenting to Plaintiff that the work had been satisfactorily completed, and/or misrepresenting to Plaintiff that the work it performed did not need to be corrected and/or that it owed no obligation to Plaintiff to correct its work

Compl. ¶¶ 11, 49, 55. Otherwise, allegations related to Plaintiff's alleged reliance on the representations and Defendant's knowledge simply refer to "the misrepresentations and/or

15

4856-6404-9618, v. 1

omissions of Defendant." Compl. ¶¶ 50-52. These allegations are simply insufficient to meet the pleading standards of either this Court or the North Carolina state courts.

In addition, it appears that Plaintiff's UDTPA claim is based on Plaintiff's allegation of fraud, since there are no specific facts pled in support of that Claim for Relief. Compl. ¶¶ 59-66. Therefore, the requirement of particularity also extends to claims under the UDTPA and demands dismissal of Plaintiff's Seventh Claim for Relief. *Diop*, 511 F. Supp. 3d at 687 (internal citation omitted). In keeping with the foregoing, this Court should dismiss Plaintiff's Fifth, Sixth and Seventh Claims for Relief.

### E. The UDTPA does not apply to Learned Profession of Architecture.

North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") prohibits unfair trade practices affecting commerce. N.C. Gen. Stat. § 75-1.1. However, by the UDTPA's express terms, "commerce . . . does not include professional services rendered by a member of a learned profession." *Id.* Whether the alleged conduct falls within the "learned profession" exemption is a question of law for the Court and may be determined upon dispositive motion. *See e.g.*, *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 199, 794 S.E.2d 898, 899 (2016); *Wheeless v. Maria Parham Med. Ctr., Inc.*, 237 N.C. App. 584, 589-91, 768 S.E.2d 119, 123-124 (2014); *Reid v. Ayers*, 138 N.C. App. 261, 268, 531 S.E.2d 231, 236 (2000) ("Because we conclude that defendants fall within the learned profession exemption, we hold that plaintiffs' claim is legally insufficient.").

The learned profession exception to the UDTPA requires a two-part analysis: (1) "the person or entity performing the alleged act must be a member of a learned profession"; and (2) "the conduct in question must be a rendering of professional services." *Mason v. Health Mgmt. Assocs., LLC*, 421 F. Supp. 3d 237, 245 (W.D.N.C. 2019) (citation omitted). In this case, the

4856-6404-9618, v. 1

second part of the analysis is undisputed: Plaintiff's Complaint is expressly predicated on Arcadis's provision of professional services under the Parties' Contract, and its claims are based on alleged errors and omission in Arcadis's plans and specifications. Compl. ¶¶ 7-15.

Likewise, there should be no disagreement at this juncture that the practice of architecture is a "learned profession" within the terms of UDTPA. While the North Carolina Supreme Court has not ruled on the issue, the United States District Court for the Western District of North Carolina addressed the question at length in *RCDI Const., Inc. v. Spaceplan/Architecture, Planning & Interiors, P.A.*, which was affirmed *per curiam* by the Fourth Circuit Court of Appeals, and concluded that architecture is a "learned profession." 148 F. Supp. 2d 607, 618 (W.D.N.C. 2001)*, aff'd,* 29 Fed. Appx. 120 (4th Cir. 2002). As this Court observed in *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, 122 F.3d 408, 424 (E.D.N.C 2015), "the Fourth Circuit's reasoning in *RCDI Construction* [must be followed] in the absence of contrary decisions by North Carolina state courts."

For these reasons, there is no viable claim under the UDTPA based upon Arcadis's provision of architectural services pursuant to the Parties' Contract. As a result, this Court should dismiss Plaintiff's Seventh Claim for Relief.

**F.** **Plaintiff has alleged no basis for this Court to impose Punitive Damages on Arcadis.**

Plaintiff's Eighth Claim for Relief/Punitive Damages must be dismissed because North Carolina recognizes no independent cause of action exists for punitive damages. "[P]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it." *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E. 2d 472, 474 (1991) (quoting J. Stein, Damages & Recovery § 195 at 389 (1972)), *aff'd*, 417 S.E.2d 447 (N.C. 1992); *Baldwin v. Duke Energy Corp.*, No. 12-CV-212, 2012 WL

4856-6404-9618, v. 1

3562402, at *1(W.D.N.C. Aug. 17, 2012) (dismissing a claim for punitive damages after stating that "North Carolina does not recognize a 'cause of action' for punitive damages").

Moreover, punitive damages may not be awarded solely for breach of contract. *Id.,* § 1D–15(d). Thus, where—as will be the case here upon dismissal of Plaintiff's extracontractual claims—the sole surviving claim is for breach of contract, a trial court should dismiss any claim for punitive damages. *Riggs v. Orkin, Inc.,* No. 7:11-CV-5-D, 2011 WL 2417016, at *4 (E.D.N.C. June 13, 2011) (citing *Carcano v. JBSS, LLC,* 200 N.C.App. 162, 180–81, 684 S. E.2d 41, 54 (2009)).

### G. **Claims for Consequential Damages are Barred by the Parties' Contract.**

In six of its eight Claims for Relief, Plaintiff asserts an entitlement to consequential damages. However, section 9 of the Parties Contract expressly addresses consequential damages and states "In no event shall [the Architect] be liable for incidental, special, punitive, exemplary, or consequential damages of any kind." Compl., Ex. A, p. 10 of 13.

Such waivers are valid and enforceable under North Carolina law as was recognized by this Court in *Severn Peanut Co. v. Indus. Fumigant Co*., 826 F. Supp. 2d 871, 874–75 (E.D.N.C. 2011). In that case, Judge Boyle cited *Blaylock Grading Co., LLP v. Smith,* 189 N.C.App. 508, 658 S.E.2d 680, 683 (2008) for the proposition that "even companies in an 'extensively regulated' industry are permitted to limit their liability by contract" and found that Plaintiffs were contractually barred from proceeding on claims for consequential damages. Judge Boyle entered an Order finding that the consequential damages waiver barred any consequential damages claimed by Plaintiff even though he denied the underlying motion to dismiss as the factual question of what damages were direct versus consequential remained outstanding. Whether the Court is inclined to deny all or part of this Partial Motion to Dismiss, or whether it grants the motion *in toto*

and dismisses all claims other than the Breach of Contract Claim, the Court should also dismiss Plaintiff's claims to the extent they seek to recover consequential or other damages barred by the terms of the Parties' Contract.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests its Partial Motion to Dismiss be GRANTED, Plaintiff's Second through Eighth Claims for Relief be DISMISSED WITH PREJUDICE and for such other Relief set forth in the Partial Motion to Dismiss.

This the 18th day of July, 2024.

HAMILTON STEPHENS
STEELE + MARTIN, PLLC


By:    /s/ Allen L. West
         Allen L. West (NC Bar No. 25759)
         Adrianne Chillemi (NC Bar No. 30714)[3]
         525 N. Tryon Street, Suite 1400
         Charlotte, NC 28202
         (704) 344-1117
         awest@lawhssm.com
         achillemi@lawhssm.com
         *Attorneys for Defendant Arcadis*
         *Processional Services (USA) Inc. f/k/a IBI*
         *Group Professional Services (USA) Inc.*

---

[3]      Ms. Chillemi submitted her Application for Admission to Practice in this Court on July 17, 2024, via United States Postal Service. Her application is pending as of July 18, 2024.

19

4856-6404-9618, v. 1

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.2(f)(3) of the Eastern District of North Carolina, this memorandum complies with the applicable word limit of 8,400 words. This memorandum of law contains approximately 6500 words and is under 30 pages.

This the 18th day of July, 2024.

HAMILTON STEPHENS
STEELE + MARTIN, PLLC


By:    /s/ Allen L. West
_____

Allen L. West (NC Bar No. 25759)
Adrianne Chillemi (NC Bar No. 30714)[4]
525 N. Tryon Street, Suite 1400
Charlotte, NC 28202
(704) 344-1117
awest@lawhssm.com
achillemi@lawhssm.com
*Attorneys for Defendant Arcadis*
*Processional Services (USA) Inc. f/k/a IBI*
*Group Professional Services (USA) Inc.*

---

[4] Ms. Chillemi submitted her Application for Admission to Practice in this Court on July 17, 2024, via United States Postal Service. Her application is pending as of July 18, 2024.

4856-6404-9618, v. 1

## <u>CERTIFICATION UNDER USE OF ARTIFICIAL INTELLIGENCE</u>
## <u>LOCAL STANDING ORDER</u>

Pursuant to this Court's Local Standing Order referenced as Docket No. 3:24-mc-104 related to the usage of artificial intelligence platforms ("AI") in connection with the submission of briefs and other filings before this Court, the undersigned hereby certifies that he has adhered to this Court's requirements regarding the usage of AI. Either no AI was employed, or to the extent it was, all statements and citations were verified by counsel pursuant to the mandate of the Local Standing Order.

This the 18th day of July, 2024.

HAMILTON STEPHENS
STEELE + MARTIN, PLLC


By: _____/s/ Allen L. West_____

Allen L. West (NC Bar No. 25759)
Adrianne Chillemi (NC Bar No. 30714)[5]
525 N. Tryon Street, Suite 1400
Charlotte, NC 28202
(704) 344-1117
awest@lawhssm.com
achillemi@lawhssm.com
*Attorneys for Defendant Arcadis*
*Processional Services (USA) Inc. f/k/a IBI*
*Group Professional Services (USA) Inc.*

---

[5]     Ms. Chillemi submitted her Application for Admission to Practice in this Court on July 17, 2024, via United States Postal Service. Her application is pending as of July 18, 2024.

4856-6404-9618, v. 1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this day, I electronically filed the foregoing ***Memorandum of Law in Support of Defendant's Partial Motion To Dismiss*** with the Clerk of Court using the CM/ECF system which will send notifications of such filing to the following:

Todd A. Jones
Christian Lunghi
ANDERSON JONES. PLLC
tjones@andersonjones.com
clunghi@andersonjones.com

This the 18th day of July, 2024.

HAMILTON STEPHENS
STEELE + MARTIN, PLLC


By:     /s/ Allen L. West
_____

Allen L. West (NC Bar No. 25759)
Adrianne Chillemi (NC Bar No. 30714)[6]
525 N. Tryon Street, Suite 1400
Charlotte, NC 28202
(704) 344-1117
awest@lawhssm.com
achillemi@lawhssm.com
*Attorneys for Defendant Arcadis Processional Services (USA) Inc. f/k/a IBI Group Professional Services (USA) Inc.*

---

[6]     Ms. Chillemi submitted her Application for Admission to Practice in this Court on July 17, 2024, via United States Postal Service. Her application is pending as of July 18, 2024.

4856-6404-9618, v. 1